UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| THURSTON M. BOLTON, #284416, | ) | Civil Action No. 4:24-cv-2645-RMG-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| NURSE KARLA McCALL and DOCTOR | ) | |
| KEVEN BURNHAM, | ) | |
| | ) | |
| Defendants. | ) | |

## I.    INTRODUCTION

Plaintiff, who is proceeding pro se, brings this action pursuant to 42 U.S.C. § 1983, alleging Defendants violated his constitutional right to receive adequate medical care.   Presently before the Court are Defendants' Motion for Summary Judgment (ECF No. 52) and Plaintiff's Motion for Summary Judgment (ECF No. 55).   Because Plaintiff is proceeding pro se, he was advised pursuant to <u>Roseboro v. Garrison</u>, 528 F.3d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion could result in the motion being granted and his claims dismissed.   Plaintiff timely filed a Response (ECF No. 29).   All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C.   § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC.    This report and recommendation is entered for review by the district judge.

## II.    FACTS

At the time of the events alleged in this action, Plaintiff was incarcerated at Evans

1

Correctional Institution (ECI).   He alleges that on February 2, 2022, he awoke to excruciating pains in his legs which continued throughout the night.     Plaintiff reported his condition to his dorm officer and was sent to the medical department at ECI.   There, he was seen by Defendant Nurse Karla McCall who, without any testing, determined that Plaintiff had a potassium deficiency.   She gave Plaintiff a list of foods high in potassium that he could purchase from the canteen.   Sec. Am. Compl. pp. 1-2 (ECF No. 36).

The pain in Plaintiff's legs continued, and he returned to the medical department and was again seen by Nurse McCall.   She told Plaintiff she had already addressed his concern and she did not want to see him again.   Plaintiff was directed to give a blood sample.   Plaintiff continued to experience excruciating pain in his legs for another two weeks.   Sec. Am. Compl. pp. 2-3.

On February 24, 2022, Plaintiff was called back to medical and was seen by Defendant Kevin Burnham.[1]   At this time, his leg was swollen at his ankle and foot.   He explained to Burnham that he had been in pain for the last month and was told by Nurse McCall that he had a potassium deficiency.   Burnham determined from Plaintiff's blood test results that he did not have a potassium deficiency.   Ultimately, Plaintiff learned that he had developed three blood clots that caused Plaintiff to have his left leg amputated and to have surgery on his right leg.   Sec. Am. Compl. p. 3.   Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment by failing to properly treat his leg pain.

Nurse McCall avers that on February 2, 2022, she was conducting temperature checks[2] in Plaintiff's housing unit when Plaintiff complained that he was having leg spasms.   McCall Aff. ¶

---

[1]  Defendants assert that Plaintiff incorrectly identified Burnham as a doctor.   At the time of the events alleged in this action, Burnham was a Physician's Assistant.

[2]  During this time, medical staff conducted temperature checks twice a day as a result of the Covid-19 pandemic. McCall Aff. ¶ 5.

6 (ECF No. 52-5).   Nurse McCall had him brought to medical for an emergency visit.[3]   Id.; Pl. Med. Records p. 23 (ECF No. 52-4).   Plaintiff described the leg spasms as having "charley horses."   Id.   She examined both legs and determined that they had a normal temperature and color.   Id.   McCall explained to Plaintiff that taking hydrochlorothiazide (HCTZ) causes low potassium, and low potassium can cause leg spasms.   McCall encouraged Plaintiff to eat more foods high in potassium and placed him on the list to see the Medical Provider as requested by Plaintiff.   McCall Aff. ¶ 7; Pl. Med. Records p. 24.   She noted that he could talk to the doctor about a possible medication change if the symptoms persisted or worsened.   Pl. Med. Records p. 24.

McCall recalls Plaintiff mentioning the same symptoms to her again while she was in his housing unit, and she reminded him that he was on the list to see the Medical Provider.   McCall Aff. ¶ 8.   McCall spoke to ECI's usual Medical Provider at the time, Gregory Furness, PA, who ordered labs drawn to check Plaintiff's potassium levels.   McCall Aff. ¶ 9.   The labs, taken February 22, 2022 revealed Plaintiff's potassium level to be within normal range.   Lab Results (ECF No. 55-1).

Plaintiff was seen by Medical Provider Burnham on February 24, 2022. McCall Aff. ¶ 10; Pl. Med. Records pp. 17-18; Burnham Aff. ¶ 6 (ECF No. 52-3).   Burnham conducted a musculoskeletal exam of Plaintiff's legs due to his complaints of spasms. Pl. Med. Records pp. 17-18; Burnham Aff. ¶ 7.   Burnham documented Plaintiff's knees and ankles as "normal inspection and normal range of motion."   The medical notes further state "right leg 3/5, left leg 5/5."   Pl. Med. Records p. 18.   Burnham deferred a diagnosis at that time, but decided to treat

---

[3] McCall avers that she did not consider Plaintiff's complaint to be emergent at the time but felt it was the best way to get him seen quickly because they were not running a normal sick call schedule at that time.   McCall Aff. ¶ 6

him with Cyclobenzaprine, an anti-spasmodic, for the leg spasms, and Meloxicam for pain.   He informed Plaintiff to notify medical staff if his condition changed or worsened.   Burnham Aff. ¶ 8; Pl. Med. Records p. 18.   This was Burnham's first and only encounter with Plaintiff.   Burnham Aff. ¶ 6.

Both McCall and Burnham agree that, based on their review of Plaintiff's medical records, his condition worsened after he was seen by them.   McCall Aff. ¶ 12; Burnham Aff. ¶ 10.   On March 4, 2022, Plaintiff returned to medical during sick call and complained that his "legs keep jumping."   Pl. Med. Records pp. 11-12.   Furness diagnosed Plaintiff with Myalgia and ordered x-rays of Plaintiff's legs.[4]   Id.   On March 9, 2022, Furness again saw Plaintiff and ordered that he be transferred to the emergency room at McLeod Health after observing "blisters, hemosiderin staining, swelling, necrosis distal toes and bottom of foot, [and] no [] dropper pulse."   Pl. Med. Records pp. 5, 9.   Plaintiff's right leg was cold and left leg was warm.   Id.

Though Plaintiff's medical records from McLeod are not in the record, Defendants assert that Plaintiff was diagnosed with irreversible Rutherford Class III Ischemia, which resulted in his right leg being amputated above the knee on March 11, 2022.   They further assert that Plaintiff had bypass surgery on his left leg on September 3, 2023.   Plaintiff does not dispute these facts. McCall avers that at no point during her clinical interactions with Plaintiff did he ever present with any signs or symptoms that would have led a reasonable nurse to conclude that Plaintiff was having any sort of clotting disorder or circulatory condition relating to his legs.   McCall Aff. ¶ 13. Likewise, Burnham avers that nothing about Plaintiff's presentation to him or his examination of him on February 24, 2022, would have led a reasonable medical professional to believe that

---

[4] The x-ray orders were canceled on March 15, 2022, due to Plaintiff having a right above the knee amputation.   Pl. Med. Records p. 4.

Plaintiff was experiencing some form of clotting disorder or circulatory problems in his legs. Burnham Aff. ¶ 12.

## III.    STANDARD OF REVIEW

Under Fed.R.Civ.P. 56, the moving party bears the burden of showing that summary judgment is proper.   Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.    Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).   Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Id. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986).   The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).   The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party.   Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991).   However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment.   Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992).   The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits."   Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere

allegations or denials of his pleadings.  See Celotex, 477 U.S. at 324.  Rather, the party must present evidence supporting his or her position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A); see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## IV.    DISCUSSION

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, alleging that Defendants were deliberately indifferent to his serious medical needs.  Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)). A legal action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999). To be successful on a claim under § 1983, a plaintiff must establish two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).  As stated above, Plaintiff alleges a violation of his constitutional rights, and it is undisputed that Defendants were acting under color of state law at all relevant times.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary

and wanton infliction of pain" prohibited by the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). To state a claim for deliberate indifference to a serious medical need, a plaintiff must show that he had serious medical needs and that the defendant acted with deliberate indifference to those needs. Heyer v. United States Bureau of Prisons, 849 F.3d 202, 210 (4th Cir. 2017) (citing Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008)). A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko, 535 F.3d at 241 (internal quotation marks omitted). To constitute deliberate indifference to a serious medical need, "the treatment [a prisoner receives] must be so grossly incompetent, inadequate, or excessive to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990), overruled on other grounds by Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Unless medical needs were serious or life threatening, and the defendants were deliberately and intentionally indifferent to those needs of which he was aware at the time, a plaintiff may not prevail. Estelle v. Gamble, 429 U.S. 97, 105, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Farmer, 511 U.S. at 837, 114 S.Ct. 1970; Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986). A claim of deliberate medical indifference requires more than a showing of mere negligence, Estelle, 429 U.S. at 105–06, 97 S.Ct. 285, and "more than ordinary lack of due care for the prisoner's interests or safety." Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986).

Plaintiff argues that Nurse McCall was deliberately indifferent to his serious medical needs by misdiagnosing him with low potassium and by failing to follow certain SCDC Policies.  He argues that Burnham was deliberately indifferent to his serious medical needs by deferring a

diagnosis, delaying and denying treatment, and failing to follow certain SCDC Policies. With respect to the misdiagnosis, Defendants argue that as a nurse, McCall did not diagnose Plaintiff with low potassium, but rather cited it as a possible cause for his muscle spasms[5] given the medication he was taking and suggested that he increase his potassium intake while waiting to be seen by a Medical Provider. Plaintiff argues that Burnham should have known by the time he examined Plaintiff that he was not suffering from low potassium because the lab results came back within a normal range. He further disputes Burnham's affidavit and medical notes indicating that Plaintiff had normal presentation and normal range of motion in both legs. He argues that his leg and ankle were swollen but fails to present any evidence to support that assertion. See footnote 5. Though Plaintiff argues that Burnham denied him treatment, it is clear from the record that he treated him with medications for his muscle spasms and pain. Plaintiff argues that Burnham should have sent him to the emergency room when he saw him on February 24, 2022.

A misdiagnosis of a medical condition is insufficient to give rise to a constitutional violation of the Eighth Amendment. See Wester v. Jones, 554 F.2d 1285, 1286 (4th Cir. 1977) ("Even if the doctor were negligent in examining [Plaintiff] and in making an incorrect diagnosis, his failure to exercise sound professional judgment would not constitute deliberate indifference to serious medical needs."); Boley v. Armor Corr. Health Servs., Inc., No. 2:21-cv-197 (RCY), 2022 WL 905219, at *8 (E.D. Va. Mar. 28, 2022) ("Misdiagnosing an inmate's illness is not a sufficient basis for a [§ 1983 deliberate indifference] claim."); Jackson v. Lightsey, 775 F.3d 170, 178-79

---

[5]Plaintiff argues that he did not complain of muscle spasms, but rather of excruciating pain in his legs, as alleged in his Second Amended Complaint. However, Plaintiff's Second Amended Complaint is not verified and, thus, the allegations contained therein are insufficient to create an issue of fact. See, e.g., Bouchat v. Balt. Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003) (noting that courts may rely only on facts supported in the record, not simply allegations in the pleadings when considering a motion for summary judgment); Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) (holding that only when a complaint is verified can it defeat an otherwise properly supported motion for summary judgment).

(4th Cir. 2014) ("While a non-cardiologist's erroneous diagnosis of a serious heart condition ... may well represent a deviation from the accepted standard of care, standing alone it is insufficient to clear the 'high bar' of a constitutional claim.").   Even the fact that the misdiagnosis had serious health consequences is not enough to convert negligent conduct into a constitutional violation. See Johnson v. Quinones, 145 F.3d 164, 168-70 (4th Cir. 1998) (prison official was not liable for failing to diagnose prisoner's pituitary tumor, even though the misdiagnosis caused him to go blind).

Further, Plaintiff's arguments that Burnham denied him treatment when he prescribed him medication for spasms and pain and that he should have sent him to the emergency room amount to nothing more than a disagreement with the treatment he received.   Disagreements between a prisoner and medical providers over proper medical care alone do not state a § 1983 claim absent exceptional circumstances. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (citing Gittlemacker v. Prasse, 428 F.2d 1, 6 (3d Cir. 1970)); accord Jackson, 775 F.3d at 178 ("[W]e have consistently found such disagreements to fall short of showing deliberate indifference.").   Plaintiff fails to present sufficient evidence to show that, based on Burnham's examination of him on February 24, 2022, it was "so obvious that even a lay person would easily recognize the necessity" for Plaintiff to be transferred to an emergency room. Iko, 535 F.3d at 241.

Plaintiff also argues that Defendants were deliberately indifferent to Plaintiff's serious medical needs because they failed to follow SCDC Policy HS-18.02.   This policy addresses emergency care procedures for inmates, see SCDC Policy HS-18.02 (ECF No. 58-1), but Plaintiff does not specifically address how McCall or Burnham violated this policy.   Nevertheless, even if they had, "prison officials' failure to follow internal prison policies are not actionable under § 1983

9

unless the alleged breach of policy rises to the level of a constitutional violation." Jackson v. Sampson, 536 Fed.Appx. 356, 357 (4th Cir. 2013). "Therefore, any failure by prison officials to follow internal correctional policies is insufficient, without more, to support [plaintiff's] claim." Id at 358.

In sum, the evidence in the record reflects that both McCall and Burnham provided treatment to Plaintiff when they examined him.   McCall suggested Plaintiff increase his potassium intake, put him on the list to be seen by a medical provider, and later contacted the medical provider prior to Plaintiff's appointment, who ordered labs.   The fact that McCall was incorrect in her assessment that Plaintiff had a potassium deficiency is insufficient to show that she was deliberately indifferent to his serious medical needs.   She made the determination based on Plaintiff's complaints, the medication that Plaintiff was taking at the time, and her medical knowledge.   In addition, Burnham conducted a physical examination of Plaintiff, noted no abnormalities, and prescribed medication to treat his symptoms. Indeed, according to Plaintiff's medical records, the issues Plaintiff presented with on March 9, 2022, when he was transported to the emergency room as ordered by Furness, (right leg with "blisters, hemosiderin staining, swelling, necrosis distal toes and bottom of foot, [and] no [] dropper pulse. ... leg cold[,] left leg warm"), were not present just five days prior on March 4, 2022, when he was first seen by Furness.

As stated above, to constitute deliberate indifference, "the treatment [a prisoner receives] must be so grossly incompetent, inadequate, or excessive to shock the conscience or to be intolerable to fundamental fairness." Miltier, 896 F.2d at 851.   "So long as the official who knew of a substantial risk to inmate health or safety 'responded reasonably to the risk,' they cannot be found liable under the Eighth Amendment, 'even if the harm ultimately was not averted.'" Pfaller

v. Amonette, 55 F.4th 436, 445 (4th Cir. 2022) (quoting Farmer, 511 U.S. at 844); see also Phoenix v. Amonette, 95 F.4th 852, 859 (4th Cir. 2024) ("[O]nce prison officials are aware of a serious medical need, they need only to respond reasonably to the risk.") (internal quotation marks and citation omitted).   Because Plaintiff fails to present sufficient evidence to create an issue of fact as to whether Defendants were deliberately indifferent to his serious medical needs, summary judgment in Defendants' favor is appropriate.

## V.     CONCLUSION

For the reasons discussed above, it is recommended that Defendants' Motion for Summary Judgment (ECF No. 52) be granted, Plaintiff's Motion for Summary Judgment (ECF No. 55) be denied, and this case be dismissed in its entirety.

　s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

June 4, 2025
Florence, South Carolina

**The parties are directed to the important information on the following page.**